**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| LEONARD SOKOLOW, | ) | Case No. 18-cv-01039 |
| | ) | |
| Plaintiff, | ) | Honorable Robert M. Dow, Jr. |
| | ) | |
| vs. | ) | |
| | ) | |
| LJM FUNDS MANAGEMENT, LTD, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*[Captions Continue on Following Pages]*

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE INVESTMENT**
**ADVISOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF**
**SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED CASES**

|  |  |
|---|---|
| STANLEY BENNETT, | ) |
| | ) Case No. 18-cv-01312 |
| Plaintiff, | ) |
| | ) Honorable Andrea R. Wood |
| vs. | ) |
| | ) |
| LJM FUNDS MANAGEMENT, LTD, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| JAMES NOSEWICZ, | ) |
| | ) Case No. 18-cv-01589 |
| Plaintiff, | ) |
| | ) Honorable Robert W. Gettleman |
| vs. | ) |
| | ) |
| LJM FUNDS MANAGEMENT, LTD, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND................................................................................................... 3

ARGUMENT........................................................................................................................... 5

    I.   THE INVESTMENT ADVISOR GROUP SHOULD BE APPOINTED LEAD
        PLAINTIFF.................................................................................................................. 5

        A.  The PSLRA Standard For Appointing Lead Plaintiff.................................................... 5

        B.  The Investment Advisor Group Is The "Most Adequate Plaintiff" ............................. 6

            1.  The Investment Advisor Group's Motion Is Timely ............................................. 6

            2.  The Investment Advisor Group Has the Largest Financial Interest in the Relief
               Sought by the Class............................................................................................... 7

            3.  The Investment Advisor Group Satisfies Rule 23's Typicality and Adequacy
               Requirements ........................................................................................................ 7

            4.  As Longstanding Peers, Tradition and SRS Are a Paradigmatic "Group" Under
               the PSLRA ............................................................................................................ 9

    II.  THE COURT SHOULD APPROVE THE INVESTMENT ADVISOR GROUP'S
        CHOICE OF COUNSEL ............................................................................................ 10

    III. THE RELATED CASES SHOULD BE CONSOLIDATED ......................................... 11

CONCLUSION...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bang v. Acura Pharm., Inc.*,
No. 10 C 5757, 2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ...................................................8, 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).....................................................................................................11

*In re Groupon, Inc. Sec. Litig.*,
No. 12 C 2450, 2012 WL 3779311 (N.D. Ill. Aug. 28, 2012)...................................................7

*Johnson v. Tellabs*, *Inc.*,
214 F.R.D 225 (N.D. Ill. 2002)..................................................................................................8

*Maiden v. Merge Techs. Inc.*,
No. 06-C-349, 2006 WL 3404777 (E.D. Wis. Nov. 21, 2006)...................................................8

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
No. 11 C 8332, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012)...................................................10

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ...................................................................................................8

*Star Ins. Co. v. Risk Mktg. Grp., Inc.*,
561 F.3d 656 (7th Cir. 2009) ...................................................................................................12

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008).......................................................................................................9

**Rules & Statutes**

Fed. R. Civ. P. 42(a) ..................................................................................................................1, 12

Fed. R. Civ. P. 23................................................................................................................. *passim*

15 U.S.C. 77z-1(a) *et seq.*.................................................................................................. *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04-cv-8141 (S.D.N.Y.)........................................................................................................11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
No. 08-md-1963 (S.D.N.Y.) ......................................................................................................11

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
   No. 09-md-2027 (S.D.N.Y.) ...............................................................................................11

Tradition Capital Management LLC ("Tradition") and SRS Capital Advisors, Inc. ("SRS") (together, the "Investment Advisor Group") respectfully submit this Memorandum of Law in support of their Motion, pursuant to Section 27 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing the Investment Advisor Group as Lead Plaintiff on behalf of the Class (as defined herein) of all persons or entities who purchased or otherwise acquired shares of LJM Preservation and Growth Fund ("LJM") between February 28, 2015 and February 7, 2018, inclusive (the ""Class Period"); (2) approving the Investment Advisor Group's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and the Law Office of Michael D. Smith, P.C. ("Michael Smith") as Liaison Counsel for the Class; and (3) consolidating each of the above-captioned actions (the "Related Cases") under Federal Rule of Civil Procedure 42(a).

## PRELIMINARY STATEMENT

The Investment Advisor Group—comprised of peer investment advisory firms in the financial services industry with years of collaborative investing experience prior to this litigation—respectfully submits that it should be appointed Lead Plaintiff on behalf of all persons who purchased or otherwise acquired shares of LJM during the Class Period (the "Class"). The Related Cases allege violations of Sections 11, 12(a)(2) and 15 of the Securities Act against LJM Funds Management, Ltd., as the investment advisor to LJM, Two Roads Shared Trust, Northern Lights Distributors, LLC, and certain individual defendants (collectively, "Defendants").

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether that movant has made a *prima facie* showing that it is an otherwise

typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

The Investment Advisor Group satisfies these requirements. As set forth below, the Investment Advisor Group caused approximately *842,821* shares of LJM to be purchased during the Class Period across various individual client accounts representing *$6,923,381* in losses as a result of the Defendants' alleged misconduct.[1] Both Tradition and SRS have received valid assignment of claims from each private client account listed on the Certifications, transferring all rights and title to prosecute all causes of action relating to transactions in LJM securities prior to the filing of this motion. *See* Certifications, Smith Decl., Ex. A ¶ 5. Accordingly, the Investment Advisor Group has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' alleged violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

The Investment Advisor Group also meets the typicality and adequacy requirements of Rule 23 because its claims are typical of those of absent Class members, and because it will fairly and adequately represent the interests of the Class. The Investment Advisor Group is willing and able to undertake the responsibilities involved in acting as Lead Plaintiff to guarantee the vigorous prosecution of the Related Cases. As set forth in greater detail in their Joint Declaration submitted herewith, Tradition and SRS fully understand the lead plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the

---

[1] Copies of the Certifications for Tradition and SRS are attached as Exhibit A to the Declaration of Michael D. Smith (the "Smith Declaration"). The Certifications set forth all transactions of the individual assignor accounts of Tradition and SRS in LJM securities during the Class Period. In addition, tables reflecting the calculations of financial losses on these investments in LJM securities during the Class Period are attached as Exhibit B to the Smith Declaration.

responsibilities of the lead plaintiff to ensure the vigorous prosecution of this action.[2]  Tradition's

and SRS' partnership is particularly appropriate here given the Investment Advisor Group's prior

relationship and shared investment approach in the years leading up to this litigation.  *See* Joint

Decl., Smith Decl., Ex. C ¶ 4.  Accordingly, the Investment Advisor Group is the "most adequate

plaintiff" and should be appointed Lead Plaintiff.

Finally, pursuant to the PSLRA, the Investment Advisor Group respectfully requests that

the Court approve its selection of Labaton Sucharow as Lead Counsel for the Class and Michael

Smith as Liaison Counsel for the Class.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v) ("[T]he most

adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent

the class").  Labaton Sucharow is a nationally recognized securities class action litigation firm

that has recovered billions of dollars in damages for defrauded investors and has the expertise

and resources necessary to handle litigation of this scale.  Accordingly, the Investment Advisor

Group respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its

motion.

## FACTUAL BACKGROUND

As its name suggests, the LJM Preservation and Growth Fund was marketed to investors

seeking lower risk and moderate growth through a more conservative strategy that would

preserve capital and avoid the massive risks of aggressive hedge funds seeking greater returns.

LJM has raised hundreds of millions of dollars from investors with shares offered pursuant to

Registration Statements and Prospectuses.  These offering materials promoted LJM as a low-risk

and trend-neutral investment, with factually inaccurate statements claiming, for example, that:

---

[2] *See* Joint Declaration of Michael C. Provine and Michael P. Riordan in Support of the Motion
of the Investment Advisor Group for Appointment as Lead Plaintiff and Approval of Selection of
Lead Counsel ("Joint Decl."), Smith Decl., Ex. C.

- LJM's "Investment Objective" was to "*seek[] capital appreciation and capital preservation with low correlation to the broader U.S. equity market*";

- "*[t]he Fund aims to preserve capital, particularly in down markets (including major market drawdowns), through using put option spreads as a form of mitigation risk*"; and

- LJM employed "*various risk mitigation techniques . . . in order to generate returns regardless of market direction.*"

These and similar statements in LJM's Registration Statements and Prospectuses were materially false and misleading because rather than pursuing capital preservation in a down market and having risk mitigation techniques to preserve capital regardless of the market direction, LJM was overexposed to the risk of volatility and a down market. While LJM purportedly sought to preserve capital and obtain growth by betting against market volatility, the fund actually made massive and unmitigated bets which exposed investors to excessive risks and catastrophic losses of capital, even in only a moderately down market of less than 5%. LJM was overexposed to the risk of volatility through leveraged options that, once exercised, required the fund to liquidate its capital to pay off its positions.

This case arises from one of the most rapid mutual fund collapses in history wherein LJM lost 80% of its value in just two days. In February 2018, LJM disclosed a dramatic drop in the net asset value ("NAV") of fund shares, with *more than $600 million* evaporating in two days, wiping out *80%* of LJM's value. The NAV for the fund's shares fell from $9.67 to $4.27 on Monday, February 5, and then fell again the next day to $1.91. On February 9, 2018, LJM Funds Management, Ltd., as the investment advisor to LJM, informed the fund's shareholders that a spike in volatility caused LJM to liquidate its open positions and suffer massive losses of capital.

Contrary to the statements in the offering materials, LJM had no investment or market position to adequately preserve capital and mitigate risk in the face of volatility. Following the

collapse, an analyst from Morningstar called the LJM fund "'an outlier fund with extraordinary risks'" adding it "'should never have been marketed to fund shareholders as a tool for capital preservation.'" Analysts and the media described the fund's "collapse" as possibly "the biggest one-week drop for a mutual fund recorded in 20 years" that would make February 6, 2018 "live in infamy" for LJM's investors. On February 27, 2018, LJM Funds Management, Ltd. informed LJM shareholders that the fund would be liquidated and dissolved.

Defendants' violations of the federal securities laws and the revelations thereof have caused the Investment Advisor Group and the Class to incur significant losses.

## ARGUMENT

I.  **THE INVESTMENT ADVISOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

A.  **The PSLRA Standard For Appointing Lead Plaintiff**

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(l); *see also* 15 U.S.C. § 77z-1(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 77z-1(a)(3)(A)(i).

5

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 77z-1(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

### B.      The Investment Advisor Group Is The "Most Adequate Plaintiff"

The Investment Advisor Group respectfully submits that it is the presumptive "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

#### 1.      The Investment Advisor Group's Motion Is Timely

The Investment Advisor Group filed this motion to serve as lead plaintiff in a timely manner. Pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i), the first plaintiff to file a complaint in this action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national, business-oriented news wire service, on February 9, 2018. *See* Notice, Smith Decl., Ex. D. Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before April 10, 2018. The Investment Advisor Group filed this motion within the required time frame.

6

### 2. The Investment Advisor Group Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

The Investment Advisor Group, through the assigned claims, incurred substantial losses of *$6,923,381* on Class Period transactions in LJM securities. *See* Loss Analysis, Smith Decl., Ex. B; *see also In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2012 WL 3779311, at *3 (N.D. Ill. Aug. 28, 2012) (appointing as lead plaintiff the movant with the largest individual loss). The Investment Advisor Group is presently unaware of any other movant with a greater financial interest in the outcome of the litigation.

Consequently, and because it also satisfies Rule 23's typicality and adequacy requirements, the Investment Advisor Group is entitled to the legal presumption that it is the most adequate plaintiff.

### 3. The Investment Advisor Group Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). On a motion to serve as lead plaintiff, an investor need only establish a "*prima facie*" showing that it satisfies the typicality and adequacy requirements of Rule 23—a showing that "need not be extensive." *Bang v. Acura Pharm., Inc.*, No. 10 C 5757, 2011 WL 91099, at *3 (N.D. Ill. Jan. 11, 2011) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 263-64 (3d Cir. 2001)). The Investment Advisor Group satisfies these requirements.

7

### a. The Claims of the Investment Advisor Group Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. A lead plaintiff's claims are considered typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted); *see also Maiden v. Merge Techs. Inc.*, No. 06-C-349, 2006 WL 3404777, at \*4 (E.D. Wis. Nov. 21, 2006) (same). The typicality requirement is satisfied even when "there are some factual distinctions between the claims of the named plaintiff and those of other class members." *Johnson v. Tellabs, Inc.*, 214 F.R.D 225, 228 (N.D. Ill. 2002).

The typicality requirement is satisfied here because the Investment Advisor Group, which is not subject to any unique or special defenses, seeks the same relief and advances the same legal theories as other Class members. Indeed, like all other Class members, the Investment Advisor Group: (1) purchased LJM securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby. The Investment Advisor Group's claims therefore arise from the same course of events and their legal arguments to prove Defendants' liability are virtually identical to the balance of the Class. *See Acura Pharm.*, 2011 WL 91099, at \*4 (discussing typicality requirement). These shared claims satisfy Rule 23(a)(3)'s typicality requirement.

### b. The Investment Advisor Group Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is deemed adequate when the proposed lead plaintiff: (1) "has the ability and incentive to represent the claims of the class vigorously";

8

(2) "has obtained adequate counsel"; and (3) has no claims that "conflict [with the claims] asserted on behalf of the class." *Acura Pharm.*, 2011 WL 91099, at \*4 (citation omitted).

Here, the Investment Advisor Group will fairly and adequately represent the interests of the proposed Class.  No antagonism exists between the Investment Advisor Group's interests and those of the absent Class members; rather, the interests of the Investment Advisor Group and fellow Class members are squarely aligned.  As Registered Investment Advisors, both Tradition and SRS received valid assignment of claims from private clients transferring all rights and title to prosecute all causes of action relating to transactions in LJM securities prior to the filing of this motion.  *See* Certifications, Smith Decl., Ex. A ¶ 5; Joint Decl., Ex. C ¶¶ 2-3; *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (concluding that "an assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'").  In addition, the Investment Advisor Group retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and timely submitted its choice to the Court for approval, in accordance with the PSLRA.  *See* 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II) and (B)(v).

The Investment Advisor Group suffered substantial losses due to Defendants' alleged violations of the securities laws and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of the action.  Accordingly, the Investment Advisor Group satisfies the adequacy requirement.

### 4.     As Longstanding Peers, Tradition and SRS Are a Paradigmatic "Group" Under the PSLRA

In addition to satisfying the requirements of Rule 23, Tradition and SRS—peer investment advisory firms in the financial services industry that previously collaborated on major trends in the capital markets for many years—have demonstrated their commitment to working

cohesively as a group in the prosecution of this action.  *See* Joint Decl., Smith Decl., Ex. C.

Indeed, Tradition and SRS were motivated to come together and serve as Lead Plaintiff based on

their prior relationship and common investment exposure to the alleged misconduct in this

litigation.  *See id.* ¶ 4.

The Investment Advisor Group also determined to seek joint appointment as Lead

Plaintiff as a result of shared goals and interests as sophisticated parties with significant

resources and a substantial financial interest in the claims against Defendants to ensure that this

action is litigated vigorously and efficiently.  *See id*. ¶¶ 6-7.  The Investment Advisor Group's

primary goal in seeking a leadership role in this action is to achieve the best possible recovery

for all Class members from all potentially culpable parties.  *See id*. ¶ 6.

The evidence submitted by the Investment Advisor Group establishing its commitment to

zealously and efficiently represent the interests of the Class as members of a Lead Plaintiff group

is more than adequate to satisfy the adequacy and typicality requirements here.  *See City of*

*Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc*., No. 11 C 8332, 2012 WL 1339678, at \*8

(N.D. Ill. Apr. 18, 2012) (appointing group of investors which submitted a declaration that

"established that they intend to work together cooperatively and cohesively in this litigation").

## II.  THE COURT SHOULD APPROVE THE INVESTMENT ADVISOR GROUP'S CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class,

subject to the court's approval.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(v).  "[T]he court should

generally employ a deferential standard in reviewing the lead plaintiff's choices."  *Cendant*, 264

F.3d at 274.  The Investment Advisor Group's selection for Lead Counsel for the Class, Labaton

Sucharow, has extensive experience and a demonstrated history of success as lead counsel in

numerous important actions on behalf of defrauded investors and should be approved.

10

Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members. Labaton Sucharow presently serves as lead or co-lead counsel in securities class actions against Goldman Sachs Group, Inc. and Facebook, Inc. among other significant investor class actions currently pending. *See* Labaton Sucharow Firm Resume, Smith Decl., Ex. E.

Likewise, Michael Smith is well qualified to represent the Class as Liaison Counsel. Michael Smith maintains an office in Chicago, Illinois, and has substantial litigation experience in this court. Thus, the firm is well qualified to represent the Class as Liaison Counsel. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually have offices in the same locality as the court."). *See* Michael Smith Firm Resume, Smith Decl., Ex. F.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## III. THE RELATED CASES SHOULD BE CONSOLIDATED

The Court should consolidate the Related Cases. The PSLRA contemplates consolidation of related cases where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. 77z-1(a)(3)(B)(ii).

11

Consolidation of the above-captioned actions is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. *See Star Ins. Co. v. Risk Mktg. Grp., Inc.*, 561 F.3d 656, 660 (7th Cir. 2009) ("A district court may consolidate actions involving common questions of law or fact [pursuant to Rule 42(a)].").

Each of the Related Cases has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 11, 12(a)(2) and 15 of the Securities Act arising from the public dissemination of false and misleading information to investors against the same eleven defendants. Accordingly, the Related Cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

### CONCLUSION

For the foregoing reasons, the Investment Advisor Group respectfully requests that the Court: (1) appoint the Investment Advisor Group as Lead Plaintiff; and (2) approve the Investment Advisor Group's selection of Labaton Sucharow as Lead Counsel for the Class and Michael Smith as Liaison Counsel for the Class; and (3) consolidate the Related Cases.

Dated: April 10, 2018                                     Respectfully submitted,

By:  /s/ Michael D. Smith

**THE LAW OFFICE OF MICHAEL D. SMITH, P.C**
Michael D. Smith
53 West Jackson Boulevard
Suite 1663
Chicago, Illinois 60604
Tel: (312) 546-6138
Fax: (888) 664-8172
Email: msmith@smithlawchicago.com

*Proposed Liaison Counsel for the Class*

12

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
Email: ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for the Investment Advisor Group and
Proposed Lead Counsel for the Class*